IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL CLINE, et al., | : |
| | :     Case No. 5:18CV00258 |
|           Plaintiffs, | : |
| | : |
|    v. | :     Judge John R. Adams |
| | : |
| DART TRANSIT COMPANY, et al., | : |
| | :     **ORDER AND DECISION** |
|           Defendants. | : |

This matter is before the Court on the motion for summary judgment of Defendants Dart Transit Company ("Dart") and Susan Priest Richlak, as Administrator for the Estate of Richard M. Thompson, Jr. (collectively, "Dart"). (Doc. 55.) Plaintiffs Paul and Jeanine Cline have opposed the motion. The motion is thus ripe for review. Having considered the evidence and the parties' arguments, the Court finds that there is no genuine issue of material fact for a jury to decide, and hereby ORDERS that Dart's motion for summary judgment is GRANTED.

## I.     FACTUAL BACKGROUND

This lawsuit arises out of an accident that occurred on December 21, 2016, between two commercial motor vehicles: one operated by Plaintiff Paul Cline and the other operated by Richard Thompson, Jr. (Comp., Doc. 1-1, ¶6.) Mr. Thompson suffered a heart attack while driving, which caused his vehicle to cross the highway median and strike Plaintiff's vehicle. (Stipulation, Doc. 51, ¶ 1; CMC Transcript, Doc. 27, PageID #166.) Mr. Thompson was an independent contractor driving under the motor carrier authority of Dart Transit Company. (Answer, Doc. 5, ¶ 14.)

At the time of the accident, Mr. Thompson was medically certified to operate a

1

commercial motor vehicle.  (Randy Luckow Dep., p. 81.)  Mr. Thompson had obtained a Medical Certificate (*aka* "DOT card" or "medical card") on October 4, 2016, which medically cleared him to operate commercial motor vehicles for one year.  (*Id.*)  Mr. Thompson's medical examination was performed by an outside medical professional who is listed on a national registry, in compliance with applicable regulations.  (*Id.* p. 25-26, 122.)

Earlier in the year, in August 2016, Mr. Thompson had a medical issue that was reported to Dart as a heart attack.  (*Id.* p. 41, 45.)  Dart placed him on a safety hold during this period of recovery, which lasted several weeks.  (*Id.* p. 44.)

Before Mr. Thompson could resume operation of a vehicle under Dart's authority, Dart required him to undergo a new DOT physical with a nationally-registered medical examiner of his choice.  (*Id.* p. 25-26.)  In reviewing Mr. Thompson's new medical certification credentials, Dart ensured that Mr. Thompson disclosed the prior heart attack to his medical examiner.  (*Id.* p. 133-34.)  Dart representative Randy Luckow, Vice President of Safety, explained the process during his deposition as follows:

> A. \*\*\*[W]hen we know that a driver is off for some reason, we want to make sure that he is reporting that to the medical examiner who's giving him his medical card.
>
> Q. And why is that important?
>
> A. Because we knew that there was something there. We're not doctors.  You know, we don't – we can't diagnose.  We can't prescribe.  We can't do any of that.  We're not – we're not trained to do that. You know, we know enough that, you know, hey, if something happened with a driver, we wanted to get him checked out.  It's worth it to us to pay for another DOT physical and get this checked out, and make sure that they can do the assessment. They're the medical experts.  They can do the

2

> assessment. Let's make sure he's just listing
> whatever it is that he's been treated for. And let
> the medical doctors do their thing.

(*Id.* p. 125-126.)

On October 4, 2016, Mr. Thompson presented to Nathaniel Franley, M.D., at Ashtabula County Medical Center for his medical examination. (*Id.* p. 123, and Medical Examiner's Certificate, DART_000357, within Luckow Dep. Ex. 1.) Dr. Franley is a DOT medical examiner listed on the National Registry and not affiliated with Dart. (*Id.* p. 122, and National Registry confirmation, DART_000358 through DART_000359, within Luckow Dep. Ex. 1.)

Mr. Thompson informed Dr. Franley that he had suffered a heart attack. (*Id.* p. 123, DART_00030 – DART_000363, within Ex. 1.) On the patient medical history form Mr. Thompson submitted to Dr. Franley, Mr. Thompson clearly and unambiguously circled "heart attack" on an enumerated list of current or prior medical conditions. (*Id.*) Mr. Thompson also plainly wrote "They said i had a Heart Attack [sic]" in a section where he was asked to explain his medical conditions. (*Id.*) Upon examination, Dr. Franley certified Mr. Thompson to drive commercial motor vehicles for one year. (*Id.* p. 81; DART_000357.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment may satisfy its burden under Rule 56 in either of two ways: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

3

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Id.* Likewise, the moving party's burden of production "may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4

(S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

The Court now turns to the merits of Dart's summary judgment motion. Applying the Rule 56 standard articulated above, the Court finds that no genuine issue of material fact remains for a jury to decide, such that summary judgment is appropriate.

### III. DISCUSSION

Dart argues that the "sudden medical emergency" doctrine is a complete bar to Plaintiffs' negligence claims. The Court agrees.

As articulated by the Supreme Court of Ohio, the sudden medical emergency doctrine provides that when "the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control." *Roman v. Estate of Gobbo*, 99 Ohio St.3d 260, 2003-Ohio-3655, 791 N.E.2d 422, paragraph one of the syllabus (2003) (quoting *Lehman v. Haynam*, 164 Ohio St. 595, 59 O.O. 5, 133 N.E. 2d 97, paragraph two of the syllabus (1956)). The sudden medical emergency doctrine is a complete bar to a negligence claim. *Roman*, 2003-Ohio-3655 at ¶ 1; *Lehman*, 164 Ohio St. at 600.

The sudden medical emergency doctrine is a broad defense, not a narrow one. *See id.* It is not limited to only those drivers with no history whatsoever of the illness that caused the unconsciousness. *Roman¸* 2003-Ohio-3655 at ¶ 52. Instead, the expansive doctrine simply inquires "whether the defendant driver should have been driving at all." *Id.* at ¶ 51.

The determination of whether a commercial truck driver should be driving at all "falls

5

within the province of the DOT [U.S. Department of Transportation]." *Hensley v. United Parcel Services, Inc.*, 2014 WL 903166 1, 3 (W.D.N.C. Mar. 7, 2014); *see also Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 638 (8th Cir. 2003) (driver fitness falls squarely within the regulatory scheme and substantive expertise of DOT). Congress delegated to the Secretary of Transportation the authority to prescribe driver qualifications for commercial truck drivers. *See* 49 U.S. C. § 31102(b)(1). Pursuant to this authority, the DOT promulgated the Federal Motor Carrier Safety Regulations ("FMCSRs" or "FMCSA regulations"), under which a person "shall not drive a commercial motor vehicle" without a "medical examiner's certificate that [the person] is physically qualified." 49 C.F.R. § 391.41(a). Specifically, "the medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f). A driver is physically qualified if, among other things, he has "no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." 49 C.F.R. 391.41(b)(4) (emphasis added).

When motor carriers need to determine whether a driver is physically qualified to operate a commercial motor vehicle, they are "entitled to rely on medical determinations made by medical professionals[.]" *Green v. Pace Suburban Bus*, 2004 WL 1574246 (N.D. Ill. Jul. 12, 2004); *Michael v. City of Troy Police Dept.*, 808 F.3d 304, 307 (6th Cir. 2015) ("An employer's determination that a person cannot safely perform his job functions is objectively reasonable when the employer relies upon a medical opinion that is itself objectively reasonable."); *Campbell v. Fed. Exp. Corp.*, 918 F. Supp. 912, 918 (D. Md. 1996) (motor carriers are entitled to rely on medical professionals' determinations).

Moreover, as Dart argues, motor carriers who second guess the medical examiner's certification, or who otherwise require certain drivers to undergo additional medical testing, potentially violate the Americans with Disabilities Act ("ADA"). Absent evidence of current performance problems or observable evidence suggesting that a particular employee will pose a direct threat, employers can require periodic medical examinations of employees in only two instances: (1) where the employees are in positions affecting public safety, such as police officers and firefighters; or (2) when the medical examinations are required or necessitated by other law or regulation (*e.g.*, Federal Aviation Administration and Department of Transportation medical certifications, Occupational Safety and Health Act standards) *Jackson v. Regal Beloit America, Inc.*, 2018 WL 3078760, *8 (E.D. Ky. Jun. 21, 2018) (quoting EEOC Guidance, Part D.18, 21); *see also Nichols v. City of Mitchell*, 914 F.Supp.2d 1052, 1061 (D.S.D. 2012) ("where an employer develops a suspicion regarding the employee's health, but has no justified concern about employee's ability to perform her job, the ADA prevents the employer from requiring the employee to submit to a medical examination.") The medical certification process established by the DOT allows motor carriers to simultaneously ensure that their drivers are physically qualified to drive and adhere to the requirements of the ADA. *See generally Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

Here, it is undisputed that Mr. Thompson was medically certified to drive on the date of the accident, December 21, 2016. Mr. Thompson obtained his medical certification on October 4, 2016, and was not required to obtain another certification until October 4, 2017. (Luckow Dep. p. 77.) Consistent with the regulations and case law discussed above, Dart appropriately relied on the informed results of his DOT medical examination to determine that Mr. Thompson was physically qualified to drive. (*Id.* p. 125-26.) There is no evidence that either Mr.

Thompson or Dart were aware of any medical issues after Mr. Thompson resumed operation in October 2016 that would have prompted the need for additional medical testing. Thus, had Dart required Mr. Thompson to undergo additional medical testing or monitoring, it appears that this would have been in violation of the ADA. In any event, neither Dart nor Mr. Thompson had any reason to believe on December 21, 2016, that a heart attack was imminent.

Even when a defendant driver has a medical history that suggests a heart attack could occur, Ohio Courts have granted and affirmed summary judgment based on the sudden medical emergency defense. Indeed, in *Boyd v. Helman*, the defendant driver suffered from an acute myocardial infarction, which caused him to lose consciousness and his vehicle to veer left, crossing the center o f the roadway and colliding with the plaintiff's vehicle. 2011 WL 486845, 2011-Ohio-442, ¶ 4 (Ohio App. Feb. 11, 2011). The defendant driver was 77 years old and had several risk factors for coronary artery disease, including his age, high blood pressure, borderline high cholesterol, and weight. *Id.* at ¶ 5. The driver had been taking blood pressure medication, but it did not decrease his blood pressure. *Id.* The driver had refused to take Statin drugs suggested by his physician to lower his cholesterol levels. *Id.* An EKG a few years before the accident revealed that the driver had suffered from Premature Ventricular Contractions because every third heartbeat was irregular. *Id.* Nonetheless, the trial court granted the defendant driver's motion for summary judgment based on the sudden medical emergency defense. *Id.* ¶ 1. The appellate court affirmed, explaining that "[w]hile [the defendant driver] may have known that he had risk factors for heart disease, neither he nor anyone else could predict that a myocardial infarction was imminent." *Id.* at ¶ 8. *See also Fitas v. Estate of Baldridge*, 102 Ohio App. 3d 365, 657 N.E.2d 323 (Ohio App. 1995) (affirming summary judgment based on sudden medical emergency defense when it was undisputed that defendant had a heart attack

while driving, and that the driver could not have reasonably anticipated the heart attack based on his history, which included bypass surgery).

Here, as in *Boyd*, there is no evidence that the heart attack Mr. Thompson sustained on December 21, 2016 was imminent. No one, including the DOT-certified medical examiner who cleared Mr. Thompson to drive commercial motor vehicles, predicted a heart attack was imminent. As discussed, Dart was entitled to rely on the medical certification issued in October 2016. Mr. Thompson returned to work with no medical restrictions. Because Mr. Thompson had been cleared to drive by the DOT-certified medical examiner, the heart attack he sustained behind the wheel was sudden and unanticipated. Accordingly, the sudden medical emergency doctrine bars Plaintiffs' negligence claims, and summary judgment in favor of Dart is warranted with respect to the negligence claim against Mr. Thompson's estate (First Cause of Action).

None of Plaintiffs' arguments to the contrary are persuasive. To the extent Plaintiffs claim they need additional discovery to learn whether the DOT-certified medical examiner, Dr. Franley, was adequately informed of Mr. Thompson's heart attack, that request is baseless. As discussed, Mr. Thompson clearly and unambiguously disclosed that his medical history included a heart attack. The Court permitted the parties to conduct discovery on liability issues, and particularly the sudden medical emergency defense. The parties conducted this discovery, and the undisputed evidence is that after his August 2016 heart attack, Dart ensured that Mr. Thompson presented to a nationally recognized DOT medical examiner before returning to work, and that Mr. Thomson disclosed his prior heart attack to the examiner. No additional discovery is required.

Plaintiffs, without evidence, also request additional discovery based on an unfounded suspicion that Mr. Thompson sustained a third heart attack between the one in August 2016 and

the one on December 21, 2016, which caused the subject accident. Plaintiffs' vague and tortured argument arises out of an abbreviated remark in the Coroner's Report prepared after Thompson's fatal heart attack on December 21, 2016. However, the coroner's report lists only a single event in a subsection titled "Acute and subacute myocardial infarctions." The report indicates only one "Transmural myocardial infarction (approximately 3+ weeks)." The indicated time span, of more than three weeks prior, would include August 2016, when Thompson had his first heart attack. There is simply no evidence apart from bald speculation that Mr. Thompson suffered a third heart attack between August 2016 and the fatal attack in December 2016. Plaintiffs' unsupported references to the mere possibility that third attack occurred are not enough to warrant additional discovery, or to survive summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (a plaintiff cannot survive summary judgment based on conjecture or conclusory allegations).

Further, Plaintiffs have mistakenly relied on three cases in their opposition to summary judgment (*Eck, Genesis, Garret*) for the false proposition that courts do not rely on U.S. DOT medical certification cards because, among other things, drivers may not disclose relevant medical information to the certifying physician. (Doc. 63, Page ID #26986). The *Eck* case involves a motion for leave to amend a complaint, not a motion for summary judgment, and does not address the reliability of a medical certification card. 2006 WL 2583573 at *1 (E.D. Penn. Sept. 5, 2006). The *Genesis* case does not involve a medical certification, but rather involves drug test results, and has nothing to do with reliance on medical certification. 1998 WL 246433 at *2, ¶ 18 (N.D. Ill. Apr. 30, 1998). As for *Garrett*, the issue presented was whether the medical examiner would have certified the driver had he known about prescription medications that the driver failed to disclose. Here, as discussed above, the information in question (the

10

August 2016 heart attack) was in fact disclosed to the medical examiner, and speculation about what the medical examiner did with that information is insufficient to avoid summary judgment. Moreover, the Court notes that Plaintiffs present no caselaw whatsoever in which summary judgment based on the sudden medical emergency doctrine was denied.

Further, Plaintiffs' request for more information about the corporate relationship between Dart and Highway Sales, Inc. is unavailing, as it could not create in issue of fact for a jury to decide. It is well-established that motor carriers are "entitled to rely on medical determinations made by medical professionals" when they are determining a driver's physical qualification to operate a commercial motor vehicle. *Green*, 2004 WL 1574246 (N.D. Ill. Jul. 12, 2004); *Michael*; 808 F.3d at 307 (6th Cir. 2015). Plaintiffs do not present any meritorious arguments to the contrary, nor do they present evidence to contradict that the heart attack Mr. Thompson suffered behind the wheel on December 21, 2016 was sudden and unanticipated. Discussions between Mr. Thompson and someone named "D. Goddard" in August or September 2016 could not possibly alter this fact. The corporate relationship between Dart and Highway Sales, Inc. is immaterial. No amount of additional discovery on these points could yield a genuine issue of material fact sufficient to defeat summary judgment.

Finally, Plaintiffs' attempt to address whether Dart would have run afoul of the ADA if Dart had required more than the DOT examiner's certification before allowing Mr. Thompson to drive is irrelevant and inapplicable. (*See* Doc. 63, PageID # 2701.) Part 391.47 of the Federal Motor Carrier Safety Regulations outlines a procedure whereby an application is filed to resolve conflicts between two or more medical evaluations of a commercial driver. 49 C.F.R. § 391.47. In the present case, there were no conflicting medical evaluations and there was no application to resolve a non-existent conflict. This regulation simply has no application to the present case,

and Plaintiffs' argument is untenable.

Here, the undisputed evidence is that Mr. Thompson was medically certified to operate commercial motor vehicles, after disclosing his August 2016 heart attack to the DOT medical examiner. As discussed, Dart was permitted to rely on this certification. Under these circumstances, Mr. Thompson's December 2016 heart attack was unforeseeable, and the sudden medical emergency doctrine applies. This doctrine serves as a complete bar to Plaintiffs' negligence claims contained in Plaintiffs' First Cause of Action. No amount of additional discovery could generate a genuine issue of material fact for a jury to decide. Thus, summary judgment is proper on Plaintiffs' cause of action in negligence.

Plaintiffs agree that summary judgment as to Plaintiffs' First Cause of Action warrants summary judgment with respect to the balance of the complaint (Second through Fifth Causes of Action), as the remaining claims are derivative. Therefore, summary judgment is awarded to Defendants on all claims presented in the complaint.

## IV.    CONCLUSION

For the reasons stated, the sudden medical emergency doctrine bars Plaintiffs' complaint in negligence, and compels summary judgment in favor of Dart. Plaintiffs' remaining causes of action are derivative of their negligence claim, and are thus also subject to summary judgment. Accordingly, the Court hereby ORDERS that Dart's motion for summary judgment on the complaint (Doc. 55) is GRANTED.

**IT IS SO ORDERED.**

                                                                           _s/*John R. Adams*_  
                                                                           JOHN R. ADAMS  
                                                                           UNITED STATES DISTRICT JUDGE

**DATED**: 3/20/2019