UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL CLINE, et al., | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiffs, | ) | CASE NO.: 5:18CV0258 |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| DART TRANSIT COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on two motions: (1) the Motion for Summary Judgment (Doc. 111) of Defendants Dart Transit Company ("Dart") and Susan Priest Richlak, as Administrator for The Estate of Richard M. Thompson, Jr. (collectively, "Defendants") on the claims of Plaintiffs Paul and Jeanine Cline, and (2) the Motion to Dismiss of Defendant Richlak as Administrator for The Estate of Richard M. Thompson, Jr. (Doc. 87). The motions are ripe for the Court's consideration. Having fully reviewed and considered the motions, the evidence on record, and the parties' arguments, the Court hereby ORDERS that Defendants' Motion for Summary Judgment (Doc. 111) is GRANTED in its entirety. The Court further ORDERS that the motion to dismiss of Defendant Richlak as Estate Administrator (Doc. 87) is DENIED AS MOOT. The reasons for the Court's ruling are fully set forth in the opinion below.

I. **UNDISPUTED FACTS**

This lawsuit arises out of an accident that occurred on December 21, 2016, between two commercial motor vehicles: one operated by Plaintiff Paul Cline and the other operated by Richard

1

Thompson, Jr. (Compl., Doc. # 1-1, at ¶ 6). Mr. Thompson sustained a fatal heart attack while driving, which caused his vehicle to cross the highway median and strike Plaintiff's vehicle. (Stipulation, Doc. # 51, at ¶ 1; CMC Transcript, Doc. # 27, at PAGEID # 166). Mr. Thompson was an independent contractor driving under the motor carrier authority of Dart Transit Company ("Dart"). (Answer, Doc. # 5, at ¶ 14).

At the time of the subject accident, Mr. Thompson was medically certified to operate a commercial motor vehicle. (Deposition of Randy Luckow ["Luckow depo."] at p. 81). Mr. Thompson had obtained a Medical Certificate (*aka* "DOT card" or "medical card") on October 4, 2016, which medically cleared him to operate commercial motor vehicles for one year. (Id.). Mr. Thompson's medical examination was performed by an outside medical professional who is listed on a national registry, in compliance with applicable regulations. (Id. at pp. 25-26, 122).

Earlier in the year, in August 2016, Mr. Thompson had a medical issue that was reported to Dart as a heart attack. (See id. at pp. 41, 45). Dart placed him on "Safety Hold" during his period of recovery, which lasted several weeks. (Id. at p. 44). Before he could resume operation of a vehicle under Dart's authority, Dart required that Mr. Thompson undergo a new DOT physical with a nationally registered medical examiner of his choice. (Id. at pp. 25-26). In reviewing Mr. Thompson's new medical certification credentials, Dart ensured that Mr. Thompson disclosed the prior heart attack to his medical examiner. (Id. at pp. 133-34). Dart representative Randy Luckow, Vice President of Safety, explained this process during his deposition as follows:

> A. \* \* \* [W]hen we know that a driver is off for some reason, we want to make sure that he is reporting that to the medical examiner who's giving him his medical card.
>
> Q. And why is that important?
>
> A. Because we knew that there was something there. We're not doctors. You know, we don't -- we can't diagnose. We can't prescribe. We can't do any of that. We're not – we're not trained to do that. You know, we know enough

>  that, you know, hey, if something happened with a driver, we wanted to get him checked out. It's worth it to us to pay for another DOT physical and get this checked out, and make sure that they can do the assessment. They're the medical experts. They can do the assessment. Let's make sure he's just listing whatever it is that he's been treated for. And let the medical doctors do their thing.

(Id. at pp. 125-26).

On October 4, 2016, Mr. Thompson presented to Nathaniel Franley, M.D. at Ashtabula County Medical Center for his medical examination. (Id. at p. 123, and Medical Examiner's Certificate, marked as Bates-labeled document DART_000357 within Ex. 1 to Luckow depo.). Dr. Franley is a DOT medical examiner listed on the National Registry and not affiliated with Dart. (Id. at p. 122, and National Registry confirmation, marked as DART_000358 through DART_000359 within Ex. 1 to Luckow depo.). Mr. Thompson informed Dr. Franley that he had had a heart attack. (Id. at p. 123, and DART_000360 through DART_000363 within Ex. 1 attached thereto). Upon examination, Dr. Franley medically certified Mr. Thompson to drive commercial motor vehicles for one year. (Id. at p. 81 and DART_000357).

During the course of discovery, Plaintiffs produced the report of Renee Robinson, M.D., the medical examiner who examined Mr. Thompson's body after his death. Dr. Robinson was deposed to discuss her review and opinions.

In her report, Dr. Robinson opined that Mr. Thompson would have experienced "some degree of symptomatology" prior to his fatal heart attack in December 2016. When questioned about this opinion during her deposition, however, Dr. Robinson acknowledged that she did not know what symptoms Mr. Thompson would have had, nor did she know whether Mr. Thompson himself would have even recognized such symptoms as indicative of a heart health issue:

>  Q.  Now, you also state that Mr. Thompson would have experienced some degree of symptomatology. What do you mean by some degree

> of symptomatolgy?
>
> A. If we're going by kind of like the textbook heart attack symptoms, degree just means severity. So was he having crushing chest pain all the time, maybe not, but was he having a little chest tightness when he walked up the stairs, maybe. Now, if he had that chest tightness walking up the stairs, did he even recognize that that's from his heart or did he just think he pulled a muscle. That's unclear as well. But there was so much happening in his heart, to not have symptoms seems not impossible, but highly unlikely to me, because blood was being blocked off to his heart and was killing his heart muscle. That's going to cause some pain.
>
> Q. You gave a couple of examples, crushing chest pain perhaps or some tightness walking up steps. What are other types of symptomatolgy?
>
> A. Some people can have pain in their jaw or their neck. Sometimes people can mistake their chest pain for being acid reflux. Getting into the more unusual symptoms, sometimes you can have vomiting, diarrhea, you can pass out. You know, there's kind of a wide gamut of symptoms, but those seem to be the ones that I encounter most frequently.
>
> Q. And as we sit here today, you don't know what symptomatology Mr. Thompson would have had in the weeks and months leading up to his fatal heart attack?
>
> A. Correct. But based on the condition of his heart, I think it's likely that he had symptoms.
>
> Q. Right. But you'd have to speculate to say specifically which symptoms he had; right?
>
> A. Correct, correct.
>
> Q. You also state in your supplemental report whether or not he recognized or attended to these symptoms also remains unclear. And so as we sit here today, you do not know if Mr. Thompson recognized the symptoms of these myocardial infarctions?
>
> A.     Correct.

(Deposition of Renee Robinson, M.D. ["Robinson depo."] at pp. 96-98). Dr. Robinson distinguished between a *symptomatic* and an *asymptomatic* myocardial infarction, the former meaning it is capable of being recognized as a heart attack, and the latter meaning it is not

4

capable of being recognized as a heart attack. During her deposition, Dr. Robinson acknowledged that she did not know if Mr. Thompson had a symptomatic myocardial infarction between his recertification in October 2016 and his fatal heart attack:

> Q. You don't know if Mr. Thompson had a symptomatic myocardial infarction between the time that he was medically certified to drive a truck and his fatal heart attack in December of 2016; correct?
>
> A. Correct.

(Id. at p. 101). It is thus not surprising that Dr. Robinson also has no idea whether Dart was aware of any heart health issues for Mr. Thompson after his recertification:

> Q. As we sit here today and based on everything you have reviewed for this consultation, you have no idea if Dart Transit Company knew about any symptoms that Mr. Thompson may have experienced in the weeks or months leading up to his fatal heart attack?
>
> A. I don't know if they know, correct yeah.

(Id. at pp. 99-100).

There is no evidence that Mr. Thompson treated with any physician after he medically qualified to drive in October 2016. In his medical certification exam record, Mr. Thompson listed a number of medications he was taking, some of which can treat heart disease, heart failure, high blood pressure, and high cholesterol.

## II.    FED. R. CIVL P. 56(c) LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light

most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir.1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. DISCUSSION

In his first and second cause of actions, Plaintiff brings claims of negligence and vicarious liability against the Estate of Mr. Thompson and Dart, respectively. With respect to these claims, Defendants have asserted the affirmative defense of sudden medical emergency.

In Ohio, the sudden medical emergency doctrine ("SME") is an affirmative defense that holds that:

> Where the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control.

6

It is Defendants' burden to prove the defense, "including proving that the unconsciousness was not foreseeable." *Roman v. Estate of Gobbo*, 99 Ohio St.3d 260, 2003-Ohio-3655, 791 N.E.2d 422, ¶ 56 (2003). Many cases in which the sudden medical emergency is raised as a defense are not well suited to resolution by summary judgment, but must instead proceed to trial. *Id.* at 58.

Although certain medical emergency defense cases may not be suitable for summary judgment, the Supreme Court of Ohio has rejected a narrow interpretation of the sudden medical emergency doctrine that would limit the defense to only those drivers with no history whatsoever of the illness that cased the unconsciousness, meaning "all drivers with any history of illness [would be] unable as a matter of law to prevail on a sudden medical emergency defense." *Id.* at ¶ 52. Instead, the *Roman* Court established a broad view of the doctrine, explaining the defense is a simple inquiry into "whether the defendant driver should have been driving at all." *Id.* at ¶51.

Under this broad view of sudden medical emergency defense doctrine, Ohio Courts have granted and affirmed summary judgment based on the defense. For instance, in *Boyd v. Helman*, the defendant driver suffered from an acute myocardial infarction, which caused him to lose consciousness and his vehicle to veer left, crossing the center of the roadway and colliding with the plaintiff's vehicle. 2011 WL 486845, 2011-Ohio-642, ¶ 4 (Ohio App. Feb. 11, 2011). The defendant driver was 77 years old and had several risk factors for coronary artery disease (advanced age, high blood pressure, borderline high cholesterol, and weight). *Id.* ¶ 5. The driver had been taking blood pressure medication, but it did not decrease his blood pressure. *Id.* The driver had refused to take Statin drugs suggested by his physician to lower his cholesterol levels. *Id.* An EKG a few years before the accident revealed that the driver had suffered from Premature Ventricular Contractions because every third heartbeat was

7

irregular. *Id*. A stress test had been recommended, but refused, by the driver. *Id*. In suit, the trial court granted the defendant driver's motion for summary judgment based on the sudden medical emergency defense. *Id.* at ¶ 1. The appellate court affirmed, explaining that "[w]hile [the defendant driver] may have known that he had risk factors from heart disease, neither he nor anyone else could predict that a myocardial infarction was imminent." *Id.* at ¶ 8. *See also Fitas v. Estate of Baldridege*, 102 Ohio App.3d 365, 367-369, 657 N.E.2d 323 (Ohio App. 1995) (affirming trial court's grant of summary judgment based on the sudden medical emergency defense and holding that driver could not have reasonably anticipated a heart attack that caused a sudden loss of consciousness based on his medical history, which included an artery bypass surgery); *Griffith v. Hoile*, 1998 WL 12682 (Ohio App. Jan. 12, 1998) (holding that a history of heart related problems did not make heart attack a foreseeable event where evidence showed the defendant received regular checkups, took medication, and did not exhibit any symptoms that a heart attack was imminent.)

In this case, Defendants argue that, as in *Boyd*, there is no evidence in this case that the heart attack Mr. Thompson sustained on November 21, 2016, was imminent. Prior to the heart attack, no one, not even the DOT-certified medical examiner who cleared Mr. Thompson to drive commercial motor vehicles, predicted a heart attack was imminent. Defendants argued that Mr. Thompson and Dart rightfully relied on the informed medical certification issued in October 2016. As in *Fitas*, Mr. Thompson had returned to work with no medical restrictions. Defendants contend that because Mr. Thompson had been cleared to drive, the heart attack he sustained behind the wheel on December 21, 2016 was sudden and unanticipated, and that summary judgment in favor of Mr. Thompson is warranted with respect to the negligence claim against his estate, and the on the claim against Dart for vicarious liability.

Plaintiffs counter that Mr. Thompson's DOT certification aside, summary judgment is

8

inappropriate based on the testimony of Dr. Robinson, who testified that Mr. Thompson likely experienced some degree of undeterminable symptomatology related to myocardial infarction between his recertification in October 2016 and his fatal heart attack.  Plaintiffs argue that, because the sudden medical emergency defense is an affirmative defense, Defendants must prove by a preponderance of affirmative evidence that Mr. Thompson did not experience those unknown symptoms, whatever they might have been, in a way that he would recognize the indeterminate symptoms as being related to a heart attack.  Plaintiffs contend that, without some testimony or other evidence to point to in the record that Mr. Thompson in fact did not recognize whatever unknown symptoms he likely experienced as related to a possible heart attack, Defendants have not met their burden to show that the imminent loss of consciousness caused by Mr. Thompson's fatal heart attack was unforeseeable.  It is Plaintiffs' contention that the mere absence of any evidence that Mr. Thompson possessed knowledge that his unknown symptoms were possibly related to myocardial infarction is not enough to demonstrate lack of foreseeability, and that a finding to the contrary would effectively and impermissibly shift to Plaintiffs the burden of proof on the sudden medical emergency defense.

      Plaintiffs' argument is not well-taken.  Defendants have provided evidence that Mr. Thompson was medically certified by the DOT – the body vested with authority to determine whether a commercial driver is fit to drive – at the time of the fatal accident.  As is discussed below, Dart was entitled to rely on that certification, and Dart's reliance on that certification was reasonable.  In fact, Dart might have violated the ADA had Dart subjected Mr. Thompson to restrictions or further testing.  Further, the testimony of Dr. Robinson does not change that Dart was entitled to rely on Mr. Thompson's DOT certification, or provide any basis to conclude that Mr. Thompson's loss of consciousness due to the fatal heart attack was foreseeable.  Although Dr. Robinson testified that Mr. Thompson likely experienced symptomatology related

9

to myocardial infarction between the time of his certification in October 2016 and his fatal heart attack, Dr. Robinson admitted under questioning by Defendants that she could not testify as to (1) what Mr. Thompson's symptoms would have been or how severe they might have been; (2) whether Mr. Thompson would have associated any symptoms he experienced with his heart health; and (3) whether Dart had any reason to believe that Mr. Thompson's fatal heart attack was imminent, because she had no opinion on this subject. Accordingly, Dr. Robinson's testimony does not create a question of fact concerning the propriety of Dart's reliance on Mr. Thompson's DOT certification to drive, or whether Mr. Thompson's sudden loss of consciousness due to heart attack was foreseeable. Indeed, Dr. Robinson's testimony would not aid the factfinder in determining whether Mr. Thompson (and therefore Dart) could have foreseen a sudden loss of consciousness related to a heart attack, because even considering that testimony, a jury would be required to engage in pure speculation regarding what symptoms Mr. Thompson might have suffered, and whether he experienced those symptoms in a way that he would have appreciated them as being related to a heart attack. In the context of Rule 56, such speculation is never enough to overcome summary judgment.

In asserting the medical emergency defense, Defendants point to Mr. Thompson's medical certification by the DOT as evidence that his sudden loss of consciousness due to heart attack was unforeseeable, and that Defendants had no reason to suspect that a heart attack was imminent. The fact that Mr. Thompson was medically certified at the time of the accident is undisputed.

As Defendants point out, whether a commercial truck driver should be driving at all – the question at the crux of the emergency medical defense – "falls within the province of the DOT [US Department of Transportation]." *Hensley v. United Parcel Service, Inc.*, 2014 WL 903166 1, 3 (W.D.N.C. Mar. 7, 2014); *see also Harris v. P.A.A. Transport, Inc.*, 339 F.3d 635,

10

638 (8th Cir. 2003) ("[D]river fitness falls squarely within the regulatory scheme (and substantive expertise) of DOT.") (Internal quotations omitted); *Prado v. Continental Air Transport Co.*, 982 F. Supp. 1304, 1308 (N.D. Ill. 1997) ("The court will not abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation."); *Mead v. Lattimore Materials Co.*, 2018 WL 807032, *1 (N.D. Tex. Feb. 9, 2018 (medical certification in accordance with the DOT regulations ensures the driver's continuing ability to safely operate a commercial motor vehicle).

Congress delegated to the Secretary of Transportation the authority to prescribe driver qualifications for commercial truck drivers. *See* 49 U.S.C. § 31102(b)(1). Pursuant to this authority, the DOT promulgated the Federal Motor Carrier Safety Regulations ("FMCSRs") or "FMCSA regulations"), under which a person "shall not drive a commercial motor vehicle" without a "medical examiner's certificate that [the person ] is physically qualified." 49 C.F.R. § 391.41(a). Specifically, "the medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f). A driver is physically qualified if, among other things, he has "no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." 49 C.F.R. 391.41(b)(4) (emphasis added).

When motor carriers need to determine whether a driver is physically qualified to operate a commercial motor vehicle, they are "entitled to rely on medical determinations made by medical professionals[.]" *Green v. Pace Suburban Bus*, 2004 WL 1574246 (N.D. Ill. Jul. 12, 2004); *Mitchell v. City of Troy Police Dept.*, 808 F.3d 304, 307 (6th Cir. 2015) ("An employer's determination that a person cannot safely perform his job functions is objectively

11

reasonable when the employer relies upon a medical opinion that is itself objectively reasonable."); *Campbell v. Fed. Esp. Corp.*, 918 F. Supp. 912, 918 (D. Md. 1996) (motor carriers are entitled to rely on medical professionals' determinations).

Indeed, the Court agrees with Defendants that motor carriers who second guess the medical examiner's certification, or who otherwise require certain drivers to undergo additional medical testing, potentially violate the Americans with Disabilities Act ("ADA"). Absent "evidence of current performance problems or observable evidence suggesting that a particular employee will pose a direct threat,' employers can require periodic medical examinations of employees in only two instances: (1) where the employees are in a position affecting public safety (*e.g.*, police officers and firefighters) or (2) where the medical examinations are required or necessitated by other law or regulation (*e.g.*, Federal Aviation Administration and Department of Transportation medical certifications, Occupational Safety and Health Act standards)." *Jackson v. Regal Beloit America, Inc.*, 2018 WL 3078760, *8 (E.D. Ky. Jun. 21, 2018) (quoting EEOC Guidance, Part D.18, 21); *see also Nichols v. City of Mitchell*, 914 F.Aupp.2d 1052, 1061 (D.S.D. 2012) ("where an employer develops a suspicion regarding the employee's health, but has no justified concern about the employee's ability to perform her job, the ADA prevents the employer from requiring the employee to submit to a medical examination"). This means that a motor carrier's reliance on the opinions of the DOT medical professional is a sound practice not only because the DOT-certified physician is authorized and qualified to make such determinations, but also because it allows the motor carrier to comply with the ADA and to avoid potentially discriminating against its employees because of a medical disability.

In the case at hand, it is undisputed that Mr. Thompson was medically certified by the DOT to drive on the date of the accident, December 21, 2016. Mr. Thompson obtained his

medical certification on October 4, 2016 and he was not required to obtain another certification until October 4, 2017.  (Luckow depo. at p. 77).   Consistent with the regulations and case law discussed above, Dart appropriately relied on the informed results of his DOT medical examination to determine that Mr. Thompson was physically qualified to drive.  (*Id.* p. 125-26).   There is no evidence that either Mr. Thompson or Dart were aware of any medical issues after Mr. Thompson resumed operation in October 2016 that would have prompted the need for additional medical testing.  Indeed, had Dart required Mr. Thompson to undergo additional medical testing or monitoring, Dart would have been in danger of running afoul of the ADA.

The testimony of Dr. Robinson does nothing to alter the conclusion that it was appropriate and reasonable for Defendants to rely on Mr. Thompson's DOT certification. Defendants elicited testimony from medical examiner Dr. Robinson that there is no evidence or basis to conclude that Mr. Thompson or Dart had reason to be suspicious of the validity of that certification on the date of the accident.   While Dr. Robinson believes that Mr. Thompson "had some degree of symptomatology" prior to his fatal heart attack, she acknowledged during her deposition that such symptomatology might have been something so innocuous that a reasonable person in Mr. Thompson's position could have interpreted it as acid reflux or something not related to heart health.  (Robinson depo. at pp. 96-98).   According to Dr. Robinson "some degree of symptomatology" covers "a wide gamut of symptoms" such as "a little chest tightness," jaw pain, neck pain, vomiting, diarrhea, and passing out.  (*Id*.)   Without engaging in speculation, Dr. Robinson did not know which of these symptoms Mr. Thompson may have experienced, and could not know whether he would have identified any symptoms as related to his heart health.

Indeed, Dr. Robinson testified to a reasonable degree of medical certainty that she did not know if Mr. Thompson suffered a symptomatic heart attack after his certification and before

the accident:

> Q. You don't know if Mr. Thompson had a symptomatic myocardial infarction between the time that he was medically certified to drive a truck and his fatal heart attack in December of 2016; correct?
>
> A. Correct.

(Robinson dep. at p. 101). Dr. Robinson also had no idea whether Dart was aware of any heart health issues Mr. Thompson might have had after his recertification:

> Q. As we sit here today and based on everything you have reviewed for this consultation, you have no idea if Dart Transit Company knew about any symptoms that Mr. Thompson may have experienced in the weeks or months leading up to his fatal heart attack?
>
> A. I don't know if they know, correct yeah.

(*Id.* at pp. 99-100).

In light of the above, Plaintiffs' burden shifting argument – that Defendants must point to some evidence that Mr. Thompson did not in fact identify his symptoms as related to myocardial infarction to meet their burden on the affirmative defense of sudden medical emergency – lacks merit. While Plaintiffs are correct that they are not required to disprove the emergency medical defense at the summary judgment stage, Plaintiffs are mistaken that Defendants have not met their burden to prove that Mr. Thompson's heart attack and sudden loss of consciousness were unforeseeable. Defendants have shown that the DOT had certified Mr. Thompson to drive on the date of the accident, and, as discussed above, the law is well-established that whether a commercial truck driver should be driving at all falls within the province of the DOT. *Hensley*, 2014 WL at *3. Moreover, Defendants have shown that Dr. Robinson, the only witness able to testify regarding Mr. Thompson's specific knowledge of his symptoms of myocardial infarction, cannot do anything more than speculate whether Mr. Thompson recognized that another heart attack was imminent. Accordingly, if the case were

to proceed to trial, a jury charged with deciding whether the sudden medical emergency defense applies in this case would be forced to engage in pure speculation regarding what types of symptoms Mr. Thompson suffered, the severity of those symptoms, and whether Mr. Thompson understood them to be related to a heart attack. The jury would also be forced to speculate whether Dart knew of Mr. Thompson's heart-related issues following his medical certification, as there is no evidence to indicate that Dart possessed any knowledge of such issues. Under Rule 56, this type of speculation cannot survive summary judgment. "[M]ere speculation that there is some relevant evidence not yet discovered will never suffice" to defeat a motion for summary judgment. *Saulsberry v. Fed. Exp. Corp.*, 552 F. App'x 424, 427-28 (6th Cir. 2014) (citing 11 Moore, et al., Moore's Federal Practice § 56.102[2] (2012)); *see also Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (a plaintiff cannot survive summary judgment based on conjecture or conclusory allegations).

The Court further notes that Plaintiffs present no evidence to support their accusation that Mr. Thompson was not compliant in taking medications prior to the motor vehicle accident. Plaintiffs suggest the infractions that Dr. Robinson identified after Mr. Thompson's death are proof that Mr. Thompson was not compliant in taking his medications. However, Plaintiffs have no evidence in the form of expert opinion or otherwise to support their speculation Dr. Robinson did not opine that Mr. Thompson was non-compliant in taking his medications, nor did she opine that any infractions constitute evidence that he was non-compliant. Plaintiffs present only attorney arguments without facts to support their claim. These groundless assertions are insufficient to create a material issue of fact under Rule 56.

In light of the foregoing, the uncontradicted evidence presented by Defendants establishes that neither Mr. Thompson nor Dart had reason to anticipate the period of sudden unconsciousness due to Mr. Thompson's fatal heart attack that led to the accident at issue in this

case. Here, as in *Boyd*, *Fitas* and *Griffith*, there is no evidence that the heart attack Mr. Thompson sustained on December 21, 2016 was imminent. No one, including the DOT-certified medical examiner who cleared Mr. Thompson to drive commercial motor vehicles, predicted a heart attack was imminent, and Dr. Robinson's testimony does not establish that either Mr. Thompson or Dart did or should have had reason to know that a heart attack was imminent. .Defendants have thus proved, by a preponderance of the evidence, that the sudden medical emergency defense applies under the circumstances here, and Defendants are entitled to summary judgment on Plaintiffs' claim of negligence against the Estate, and of vicarious liability against Dart. Because Plaintiffs concede that their remaining claims are derivative of the negligence claim, summary judgment is appropriate on all counts of the Complaint. Accordingly, Defendants' summary judgment motion is GRANTED in its entirety. Consistent with this grant of summary judgment, the Estate's motion to dismiss is DENIED AS MOOT.

## IV.     CONCLUSION

For all of the reasons discussed herein, the Court hereby **ORDERS** that Defendants' motion for summary judgment (Doc. 111) is **GRANTED** in its entirety. Summary judgment is awarded to Defendants on all claims in the Complaint. The Court further **ORDERS** that the Estate's motion to dismiss (Doc. 87) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

| 4/29/2021 | s/Judge John R. Adams |
|---|---|
| **Date** | **John R. Adams** |
| | **U.S. District Judge** |